$$\begin{array}{r} 2 \quad 341 \\ 55 \quad 130 \\ \hline 2 \quad 341 \\ 65 \quad 560 \end{array}$$

---

BENJAMIN F. BROOKFIELD and others v. POLLY WILLIAMS and others.

In equity there is no necessity that a partition should be so made as to give each party a share in every part of the property. Each party must have their share in *value*, which is all that is required.

To make the value of the several shares equal, one party may be required, under certain circumstances, to pay money on his share to those who receive a share of less value.

An equitable partition may be made so as to assign that portion of the land on which the improvements are placed to the person who has made them.

BILL for partition, filed by the children and heirs at law of Jacob Brookfield, deceased, states, that Samuel Wood, deceased, being seized in fee of fourteen acres of land, situate in the town-

ship of Rahway, in the county of Essex, by his last will and testament, dated February 1st, 1792, devised the same to his daughter Phebe, the wife of James Kinsey, during her natural life, and after her decease unto and among her surviving children ; and after making the said will, and long before the 28th of November, 1811, the said Samuel Wood died, and the said James Kinsey thereupon entered into the possession of the devised premises. On the 28th of November, 1811, James Kinsey and Phebe his wife, and Samuel Kinsey one of their sons, mortgaged the said fourteen acres to David Ludlow, to secure the payment of a bond given by the said Samuel Kinsey to the said David Ludlow, conditioned for the payment of two hundred and fifty dollars, with interest ; which bond and mortgage, in November, 1816, passed by assignment to the said Jacob Brookfield in his life time, and still remains unpaid. Jacob Brookfield died in 1837, possessed of the said bond and mortgage. Phebe Kinsey also died in 1837, having survived her husband, James Kinsey, and having had eight children, all of whom survived the testator, Samuel Wood. The said Jacob Brookfield in his life time became seized by purchase of the shares of five of the children of the said Phebe Kinsey, including the share of Samuel, which was covered by the above mentioned mortgage ; which shares, on his death, descended to the complainants, his children and heirs at law. He took possession of the whole of the said fourteen acres many years before his death, by virtue of his mortgage above mentioned, and continued in possession at the time of his death. At the time he entered into possession it was not the interest of the said Phebe to redeem the mortgage, the amount due thereon exceeding the value of her life estate ; and the annual value of the said land, in the condition it then was, from the time he took possession until his death, was insufficient to satisfy the mortgage. At the time Brookfield took possession, there was an old and ruinous dwelling-house and barn on the premises, not in tenantable condition, and not worth repairing ; the fences were old, and the land poor and uncultivated. Brookfield repaired the fences, manured and improved

[Brookfield et al. v. Williams et al.]

the land, and erected a new dwelling thereon at a cost of two thousand five hundred dollars, and other buildings at considerable expense; all which are yet nearly new, and in good condition. The bill prays a reference to a master to ascertain the estate and interest of the complainants in the said land, the increased value thereof by fencing, manuring and cultivation; the estate and interest of the defendants, and a decree for partition between the complainants and defendants, saving to the complainants the buildings and improvements, and allowing for the increased value of the lands by fencing, manuring and cultivation; that a commission may issue and commissioners be appointed to make partition; that all proper parties may join in conveyances agreeably to the partition, and that the parties interested may be decreed to pay the costs arising in the cause in proportion to their respective interests.

The answer of William Williams and Polly his wife, and Susan Wiley, (the said Polly and Susan being two of the children and heirs at law of James Kinsey, deceased,) admits the title of the complainants to a part of the premises, and their right to partition, and assents to a decree for partition in such way as to secure to them their rightful interest in the said lands and buildings, and in the rents and profits thereof; but insists that the said Polly and Susan are entitled each to one equal sixth part of the said premises; that Jacob Brookfield obtained possession of the land under the right and estate of the tenant for life; and that the improvements made by him on the said premises, being made during the continuance of the said life estate, are subject to the same rules, and that the defendants have the same interest in them, as if they had been made by the tenant for life during the continuance of the life estate.

The cause was set down for hearing upon the bill and answer.

*S. Scudder*, for complainants.

*O. S. Halsted*, for defendants.

[Brookfield et al. v. Williams et al.]

THE CHANCELLOR. The complainants, as heirs at law of Jacob Brookfield, deceased, by their bill ask the aid of this court for a partition of certain lands between them and the defendants. There is no objection made to a partition ; in fact, the defendants by their answer do not deny the complainants' title to a share in the lands, and are desirous that a partition should take place, but the difficulty arises as to the manner in which the same shall be made. The complainants insist that a division should be so made as to allow them the benefit of certain improvements placed by their ancestor on the lands, while the defendants claim an equal division according to their shares as well in the lands as in the improvements on the same. This is the question, and the only one now to be settled.

The lands consist of fourteen acres, situate at Rahway, in the county of Essex. They were devised by Samuel Wood, the former owner, by his last will and testament, to his daughter, the wife of James Kinsey, during her natural life, and after her death to be divided among such of her children as might be living at the time of her death. Samuel Wood died, and his daughter and her husband Kinsey went into possession of the lands, and with one of their sons executed a mortgage on the same, which came into the hands of Jacob Brookfield by assignment, and under which, for non-payment of the monies intended to be secured thereby, he entered into possession of the premises. Kinsey, the husband, died many years ago, and his wife in the year 1837, having had during their marriage eight children, seven beside the one who joined in the mortgage. Two of these children died before their mother, as is believed, leaving the property to be divided among the remaining six, or among those who represented their interests. Four of these shares were purchased by Jacob Brookfield, and descended to his heirs at law, the complainants ; and the remaining two shares belong to two daughters of Mrs. Kinsey, who are the defendants. This, from the pleadings, would seem to be the situation of the parties and their interests.

After Jacob Brookfield had so entered into possession of the

premises under his mortgage, and had purchased the shares of the children as before stated, he built a new house and out-buildings on the premises, at a cost of two thousand five hundred dollars, and greatly improved the lot by cultivation and by making new fences. There was an old house and barn on the place, which he pulled down as they had gone to decay and were much out of repair. There would seem to be no doubt that Brookfield made his improvements with the honest purpose of increasing the value of the property and rendering it more productive, and so far as appears they were made without any opposition or objection from any quarter. His rights were acquired in good faith and upon a fair and full value.

Whatever the strict rule may be at law, in this court it is quite certain there is no necessity that a partition should be made so as to give each party a share in every part of the property. If there be a house and land sufficient to give the house to one and the land to another, it may be so made. It is no object so to set off the shares as to lessen the value of any part. If there be but a single house, and nothing out of which the shares of the others can be had, then the house must be divided, but otherwise not. Each party must have their share in *value*, which is all that is required. So also, to make the value equal, one party may be required, under certain circumstances, to pay money on his share to those who receive one of less value: *Earl of Clarendon and others* v. *Horsley*, 1 *P. Wms.* 447. The principle that an equitable partition may be made, so as to assign that portion of the lands on which the improvements are placed to the person who has made them, is fully recognized in the case of *Town* v. *Needham*, 3 *Paige's Chan. Rep.* 553. The chancellor in that case says, " If, therefore, this court should arrive at the conclusion, that Harney was entitled to recover one fourth of the property, there should be a decree for an equitable partition, so that the complainant may have assigned to him that part of the premises on which the buildings have been erected."—— Judge Story, in his treatise on *Equity*, 2 *vol.*, second edition, 610, speaking on this subject, says, "A court of equity does not

45

[Brookfield et al. v. Williams et al.]

act merely in a ministerial character, and in obedience to the call of the parties who have a right to the partition; but it founds itself upon its general jurisdiction as a court of equity, and administers its relief, *ex aequo et bono*, according to its own notions of general justice and equity between the parties."

I cannot view the case before me (as contended by the defendants' counsel) as similar in principle to the case of improvements placed on lands by a tenant for life, and then seeking remuneration at the hands of the remainder man. In this way the estate in remainder might be incumbered so as possibly to defeat it altogether; for the improvements made might exceed the value of the estate, or the ability of the party to pay them. These complainants ask no remuneration for their improvements at the hands of the defendants; but only that the part of the lands on which the house and buildings stand may be assigned to them as their share. This works no injustice to the defendants; whereas a contrary rule would greatly enhance the value of their shares to the injury of the complainants. It must be remarked, too, that when these buildings were erected, Brookfield had more than the life estate; he was the owner of the greater part of the shares of those in remainder.

I have found no case where this question has been discussed and settled fully, nor have counsel been able to furnish me with any. The justice of the case, however, strikes me as plain, (and that is mainly to be looked at,) that the complainants should be allowed their share in the land on which the buildings erected by their ancestor are located. If the land on which they stand be more than their share, they must make recompense in money; but if the remaining lands are sufficient to give the defendants their share in value, it must be given out of them.

If I am right in the conclusion to which I have come, that the complainants are entitled to the present buildings, it is clear that the defendants are entitled to their share in the value of the old buildings which were pulled down, and as I think, at the time they were pulled down. They are also entitled to their share in the rents and profits from the death of their mother,

when their rights accrued. For the fencing and cultivation, as it properly belonged to the party in possession having the life estate to keep them up, I shall make no allowance for them.

Before directing a commission to make partition, it will be necessary to have a reference to a master. I shall, therefore, for the present, send the case to a master, to ascertain what are the estates and interests of the complainants and defendants, respectively, in the land in question; what buildings were put on the place by the complainants' ancestor; what was the value of the buildings pulled down and destroyed by him at the time they were so destroyed, and the amount of the rents and profits from the death of Mrs. Kinsey; and also, whether the property is so circumstanced that a division can be made by assigning the land on which the buildings are situated to the complainants, and leave sufficient to give the defendants their shares in value out of the residue. All other questions are reserved.

Order accordingly.